COURT OF APPEALS
DECISION
DATED AND FILED

October 14, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1782**

STATE OF WISCONSIN

Cir. Ct. No. **2022CV528**

IN COURT OF APPEALS
DISTRICT III

JAY STONE,

   PLAINTIFF-APPELLANT,

 V.

WISCONSIN ELECTIONS COMMISSION,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Kenosha County: DAVID P. WILK, Judge. *Affirmed in part, reversed in part and cause remanded with directions*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1     STARK, P.J. Jay Stone, pro se, challenges three administrative decisions of the Wisconsin Elections Commission, which dismissed complaints that Stone filed against several respondents alleging that certain people and

entities violated various election laws. Pursuant to WIS. STAT. § 5.05(2m)(c)4. (2023-24),[1] the Commission dismissed the complaints after concluding that none of Stone's allegations demonstrated reasonable suspicion that any election laws had been violated. The Commission further exercised its discretion under § 5.05(2m)(c)2.am. to impose a $500 forfeiture after finding one of Stone's complaints frivolous.

¶2 Stone petitioned for judicial review in the circuit court, and he now appeals from the circuit court's order dismissing his petition. Although Stone presents several arguments in support of his belief that the Commission erred, the issues in this case can be limited to two questions: (1) are the Commission's decisions under WIS. STAT. § 5.05(2m) subject to review under WIS. STAT. ch. 227; and (2) is a complainant entitled to due process under § 5.05(2m)(c)2.am.?

¶3 In answer to the first question, we conclude that the Commission's decision not to investigate or otherwise pursue a complaint under WIS. STAT. § 5.05(2m) is solely vested in its discretion and is not amenable to judicial review under WIS. STAT. ch. 227.

¶4 Turning to the second question, the parties do not dispute that Stone is entitled to due process protections based on the Commission's imposition of a forfeiture under WIS. STAT. § 5.05(2m)(c)2.am. Nevertheless, the parties disagree about the appropriate procedural protections. We determine that based on this

---

[1] Stone's complaints in this case were filed in 2021, but the parties do not allege that the relevant statutes have changed since that time. Accordingly, for convenience, all references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

record, any post-deprivation review of the Commission's finding of frivolousness and the resulting imposition of a forfeiture is insufficient alone to satisfy Stone's due process protections. Therefore, we conclude that before the Commission may find a complaint frivolous and impose a forfeiture under § 5.05(2m)(c)2.am., the Commission must provide the complainant with notice and an opportunity to be heard on the issue of frivolousness. The Commission's decision finding a complaint frivolous must also clearly articulate the basis for its finding, the basis for its imposition of a forfeiture and the amount imposed, and any findings of fact, if applicable, on which it relies.

¶5 In light of these conclusions, we affirm in part and reverse in part the circuit court's order dismissing this case, and we remand to the Commission to provide Stone with an opportunity to be heard on the frivolousness issue. If, after Stone is heard on that issue, the Commission still finds one of Stone's complaints to be frivolous, the Commission must provide specific findings of fact and conclusions of law underlying that decision and any resultant decision to impose a forfeiture.

## BACKGROUND

¶6 WISCONSIN STAT. § 5.05(2m) outlines the procedure for filing and resolving complaints alleging election law violations with the Commission. Under this subsection, "[a]ny person may file a complaint with the [C]ommission alleging a violation of [WIS. STAT.] chs. 5 to 10 or 12." Sec. 5.05(2m)(c)2.a. Once a complaint is filed, the respondent has "an opportunity to demonstrate to the [C]ommission, in writing and within 15 days after receiving the notice, that the [C]ommission should take no action against the person on the basis of the complaint." *Id.* If the Commission finds no "reasonable suspicion that a

3

violation" occurred, then "the [C]ommission *shall* dismiss the complaint." Sec. 5.05(2m)(c)4. (emphasis added). If the Commission does find reasonable suspicion that a violation "has occurred or is occurring," then the Commission "may"—but is not required to—authorize an investigation by resolution, which it retains authority to terminate at any time. Sec. 5.05(2m)(c)4.-5. The Commission may also impose a forfeiture of "not more than the greater of $500 or the expenses incurred by the [C]ommission in investigating the complaint" if it determines that a complaint is frivolous. Sec. 5.05(2m)(c)2.am.

¶7 In this case, Stone filed three complaints. In the first—Stone v. Obama, et al. (the Obama complaint)—he alleged that individuals associated with When We All Vote (WWAV),[2] Civic Nation, and the mayors of Milwaukee, Madison, and West Allis violated WIS. STAT. §§ 7.15, 12.09, 12.11, and 12.13. Specifically, Stone asserted that WWAV awarded several high schools $5,000 to incentivize students to register to vote, which he claimed amounted to unlawful payments connected to voting. Stone also objected to "Early Voting Celebrations" and related events held near polling sites where attendees were offered food and music, which he alleged violated prohibitions on providing items of value to voters. The complaint acknowledged, however, that these events were open to "voters and nonvoters alike."

¶8 Further, Stone challenged food and registration drives at Milwaukee's Fiserv Forum as unlawful inducements. He also asserted that cards distributed by WWAV asking "voters to commit to a pledge to vote" "deliberately

---

[2] Michelle Obama was named as a respondent in Stone's complaint because he alleged that she "started the nonpartisan organization" WWAV and "handpicked eight [WWAV] employees."

4

inflicted cognitive dissonance" and improperly pressured voters into casting ballots. Finally, Stone argued that the mayors overstepped their authority by partnering with WWAV through its "Civic Cities Mayors" program, thereby assuming election duties reserved for municipal clerks. After obtaining written responses to the Obama complaint, the Commission found no reasonable suspicion of wrongdoing and dismissed the matter. The Commission further concluded that the Obama complaint was frivolous, and it imposed a $500 forfeiture against Stone.

¶9 In his second complaint—Stone v. Jarrett, et al.—Stone alleged that Valerie Jarrett, Civic Nation, and the All In Campus Democracy Challenge violated election statutes by using contests and pledges to improperly influence students. According to Stone, awards given to schools with high voter registration rates served as hidden payments to encourage voting. He also contended that colleges required students to submit voting plans or pledges, which he described as "psychological and emotional threats" that created "cognitive dissonance." According to Stone, these practices violated WIS. STAT. §§ 12.11(1), (1m)(a)1., 12.09(2)-(3), and 12.13(1)(b). The Commission received responses and ultimately dismissed Stone's complaint on the ground that it did not raise reasonable suspicion of a statutory violation.

¶10 In the third complaint—Stone v. Barrett, et al.—Stone alleged that individuals affiliated with the Center for Tech and Civic Life and certain mayors improperly influenced election administration by providing or accepting private grants. He argued that "Safe Voting Plan" grants given to certain cities unlawfully placed election administration in the hands of mayors rather than municipal clerks, contrary to WIS. STAT. §§ 7.15 and 62.09(8). He further asserted that the plan interfered with free elections under WIS. STAT. § 12.09(2) and violated WIS. STAT.

5

§ 5.68 by shifting the costs of elections away from taxpayers. After receiving written submissions, the Commission found no reasonable suspicion and dismissed the complaint.

¶11 Following the Commission's dismissals, Stone sought review in the circuit court.[3] Generally, Stone contended that the Commission had failed to comply with the requirements of WIS. STAT. ch. 227. He also argued that the $500 forfeiture deprived him of due process.

¶12 The circuit court dismissed Stone's petition by oral ruling, which was later memorialized by written order. The court ruled that the decision whether to investigate or proceed with a WIS. STAT. § 5.05(2m) complaint is a wholly discretionary decision of the Commission that is not subject to judicial review by a court. The court further stated that, even if judicial review were available, the Commission acted reasonably by comparing Stone's allegations with the statutes he cited and concluding that he failed to establish a violation of the election law. As for the $500 forfeiture, the court found that the Commission acted within its authority by deeming the Obama complaint frivolous. On the due process issue, the court concluded that Stone's "cursory exploration of a constitutional challenge" was "underdeveloped." Stone appeals.

---

[3] Stone filed a summons and complaint in the circuit court. The Commission filed a motion to dismiss the complaint, seeking to convert the civil action to a WIS. STAT. ch. 227 judicial review. The court granted the Commission's motion and reclassified the matter as a judicial review under ch. 227.

Stone then filed an amended complaint, which the circuit court treated as an amended petition. Stone also filed motions for discovery, to strike materials from the Commission's brief that were not part of the administrative record, and to supplement the record with additional evidence.

## DISCUSSION

### I. Judicial review under WIS. STAT. ch. 227

¶13 The threshold issue before us is whether the Commission's decisions under WIS. STAT. § 5.05(2m) to dismiss Stone's complaints based on a lack of reasonable suspicion are subject to judicial review under WIS. STAT. ch. 227. For the reasons that follow, we conclude that the Commission's decisions whether to dismiss a complaint, to further investigate, to file a civil complaint, or to refer the complaint to a district attorney are not subject to judicial review.[4]

¶14 The question of the applicability of WIS. STAT. ch. 227 judicial review requires us to interpret several Wisconsin statutes. Statutory interpretation presents a question of law that we review independently. *Priorities USA v. WEC*, 2024 WI 32, ¶12, 412 Wis. 2d 594, 8 N.W.3d 429. The purpose of statutory interpretation "is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. That analysis starts with the language of the statute. *Id.*, ¶45. "If the meaning of the statute is plain, we ordinarily stop the inquiry." *Id.* "Statutory language is given its common,

---

[4] Our answer to this question eliminates the necessity of further analysis on the bulk of Stone's arguments on appeal, which assert that the Commission's decisions failed to comply with numerous requirements of WIS. STAT. ch. 227. We do not address these remaining arguments further.

Additionally, although Stone mentions his motion to strike and motions to present additional evidence in his brief-in-chief, he does not develop an argument regarding those motions beyond asserting that the circuit court failed to comply with WIS. STAT. § 227.57(3) when it reached its decision. *See A.O. Smith Corp. v. Allstate Ins., Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned.").

ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* The statutory language is also "interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. If this analysis results in a plain and clear statutory meaning, "then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* (citation omitted).

¶15 As we addressed briefly above, WIS STAT. § 5.05(2m) grants the Commission authority to take action on a complaint and decide whether a complaint gives rise to reasonable suspicion of an election law violation. Sec. 5.05(2m)(c)2.-4. If the Commission concludes there is no reasonable suspicion, it *must* dismiss the complaint. Sec. 5.05(2m)(c)4. ("If the [C]ommission reviews a complaint and fails to find that there is a reasonable suspicion that a violation … has occurred or is occurring, the [C]ommission shall dismiss the complaint."); *State v. Cox*, 2018 WI 67, ¶11, 382 Wis. 2d 338, 913 N.W.2d 780 ("The general rule is that the word 'shall' is presumed mandatory when it appears in a statute." (citation omitted)). Even if the Commission finds reasonable suspicion, it still has discretion whether to commence an investigation. Sec. 5.05(2m)(c)4. ("If the [C]ommission believes that there is reasonable suspicion that a violation … has occurred or is occurring, the [C]ommission may by resolution authorize the commencement of an investigation."); *Liberty Grove Town Bd. v. Door Cnty. Bd. of Supervisors*, 2005 WI App 166, ¶10, 284 Wis. 2d 814, 702 N.W.2d 33 ("The use of the word 'may' in a statute implies discretionary authority.").

¶16    Once the Commission elects to commence an investigation, it may retain a special investigator, but it still "may vote to terminate an investigation at any time," and the complaint is "deemed to be dismissed."  WIS. STAT. § 5.05(2m)(c)4.-5.    Following an investigation, the Commission may find that there is "probable cause to believe that a violation … has occurred or is occurring," which then allows the Commission to file a civil complaint or refer the complaint to a district attorney.   Sec. 5.05(2m)(c)6.a., 11.   The Commission's deliberations on these issues occur in closed session.  *See* WIS. STAT. § 19.851(2), (3).    Nevertheless, certain "records of the [C]ommission are open to public inspection and copying."  Sec. 5.05(5s)(e)1.-4.

¶17    Based on the language of WIS. STAT. § 5.05(2m), we agree with the Commission that its decision whether to act on Stone's complaints is not subject to judicial review.   The plain language of the statute gives the Commission broad prosecutorial authority to decide whether to dismiss the complaint, investigate, file a civil complaint, or refer a matter to a district attorney.  *See **State v. Jensen***, 2010 WI 38, ¶34, 324 Wis. 2d 586, 782 N.W.2d 415 ("[T]he Government Accountability Board[, the Commission's predecessor agency,] is not *required* to investigate alleged violations; it is merely *permitted* to investigate such violations.").   For example, § 5.05(2m)(a) grants the Commission authority to "investigate violations of laws administered by the [C]ommission" and to "*prosecute* alleged … violations of those laws." (Emphasis added.)  The statute is clear, however, that the exercise of that prosecutorial authority is discretionary: the Commission "*may* prosecute" and "*may …* authorize the commencement of an investigation."  Sec. 5.05(2m)(a), (c)4. (emphasis added).

¶18    WISCONSIN STAT. § 5.05(2m) then continues to describe the Commission's authority in terms of it retaining the option or permission to act,

9

rather than an obligation to do so. For example, if the Commission finds reasonable suspicion after reviewing a complaint, it "may" commence an investigation, it "may elect" to retain a special investigator, and it "may vote to terminate an investigation at any time." Sec. 5.05(2m)(c)4.-5. If the Commission ultimately finds that there is "probable cause" to believe a violation has occurred, it "may" file a civil complaint or it "may" refer the matter to a district attorney. Sec. 5.05(2m)(c)6.a., 11. Thus, the Commission operates in a prosecutorial capacity, and the Commission's prosecutorial authority remains entirely discretionary.[5]

¶19 For that reason, we are persuaded by the Commission's comparison of its discretion to that of a district attorney. A district attorney "has great discretion in determining whether to commence a prosecution," and he or she "is not required to prosecute all cases in which it appears that the law has been violated." *State v. Karpinski*, 92 Wis. 2d 599, 607 & n.12, 285 N.W.2d 729 (1979); *State v. Kenyon*, 85 Wis. 2d 36, 45, 270 N.W.2d 160 (1978) ("The discretion resting with the district attorney in determining whether to commence a prosecution is almost limitless …."); *see also* *Youhoing v. United States*, 971 F. Supp. 2d 128, 129 (D.D.C. 2013) ("[T]he United States Attorney General has absolute discretion in deciding whether to investigate claims for possible criminal or civil prosecution. As a general rule … such decisions are not subject to judicial

---

[5] As the Commission notes, WIS. STAT. § 5.05(2m)(a) begins with the command that "[t]he [C]ommission *shall* investigate violations of laws administered by the [C]ommission," but the subsequent provisions governing enforcement are mostly stated in discretionary terms, using the word "may." *See* § 5.05(2m)(a), (c)2.am., (c)4., (c)6.a., (c)11. (emphasis added). Thus, according to the Commission, "the introductory 'shall' is best understood as identifying the entity that investigates—the Commission—rather than requiring it to investigate," which it observes is how our supreme court has interpreted the language. *See State v. Jensen*, 2010 WI 38, ¶34 & n.12, 324 Wis. 2d 586, 782 N.W.2d 415.

review."). "By virtue of our separation-of-powers principle, no one branch of government may substantially encroach upon a function that has been delegated to another. As part of the executive branch of the government, district attorneys 'have primary responsibility and wide discretion' in charging criminal offenses without judicial interference." *State v. Matthews*, 2019 WI App 44, ¶13, 388 Wis. 2d 335, 933 N.W.2d 152 (citations omitted); *see also State ex rel. Zignego v. WEC*, 2021 WI 32, ¶3, 396 Wis. 2d 391, 957 N.W.2d 208 ("With limited exceptions, the judicial branch ordinarily does not order the executive branch to do its job.").

¶20 Like district attorneys, the Commission is part of the executive branch. *See State ex rel. Zignego v. WEC*, 2020 WI App 17, ¶¶3, 6, 391 Wis. 2d 441, 941 N.W.2d 284, *aff'd as modified*, 396 Wis. 2d 391 ("The Commission is an independent agency of this state's executive branch responsible for the administration of the election laws in this state."); WIS. STAT. § 15.61 (creating the Commission within WIS. STAT. ch. 15, which is titled "Structure of the Executive Branch"). And also like district attorneys, who have concurrent jurisdiction over election laws, the Commission exercises quasi-prosecutorial discretion when it reviews a complaint under WIS. STAT. § 5.05(2m). *See Jensen*, 324 Wis. 2d 586, ¶34 & n.12 (explaining that "the appropriate district attorney's office ha[s] *concurrent* jurisdiction to investigate" election law violations); WIS. STAT. § 978.05(1) (authorizing district attorneys to prosecute criminal actions arising from violations of WIS. STAT. ch. 5 and other election law chapters).

¶21 In further support of our position, we look to *Wisconsin's Environmental Decade, Inc. v. PSC*, 93 Wis. 2d 650, 654-55, 287 N.W.2d 737 (1980), where our supreme court addressed whether the Public Service Commission's (PSC) decision not to investigate allegedly discriminatory utility

11

rates was a reviewable action under WIS. STAT. ch. 227.[6]  The statute at issue provided that the PSC "may … investigate" potentially discriminatory public utility rates.  *Wisconsin's Env't Decade*, 93 Wis. 2d at 655 (citing WIS. STAT. § 196.28 (1977-78)).  Our supreme court concluded that the PSC's decision "not to investigate this complaint against these utilities … is a nonreviewable, discretionary determination."  *Id.*

¶22    Our consideration of *Wisconsin's Environmental Decade* should not suggest, however, that agency decisions are not reviewable under WIS. STAT. ch. 227 simply by virtue of the decision being a discretionary determination.  *See, e.g.*, *Aldrich v. LIRC*, 2012 WI 53, ¶93, 341 Wis. 2d 36, 814 N.W.2d 433 (recognizing judicial review of discretionary agency decisions and noting that WIS. STAT. § 227.57(8) (2009-10) "states that 'the court shall not substitute its judgment for that of the agency on an issue of discretion'").  Far from it.  Instead, it is the nature of the Commission's decisions under WIS. STAT. § 5.05(2m)— which lack any statutory constraints on the Commission's discretion and are comparable to a district attorney's prosecution decisions—that render the decisions to dismiss the complaints in this case unreviewable under ch. 227.

---

[6] In Stone's reply brief, he argues that the Commission "stated a false analogy between this case and" *Wisconsin's Environmental Decade, Inc. v. PSC*, 93 Wis. 2d 650, 287 N.W.2d 737 (1980).  According to Stone, *Wisconsin's Environmental Decade* is "a District Court decision, not a Supreme Court decision as the [Commission] stated in its brief," and "[t]he District Court's decision does *not* contain the phrase 'a nonreviewable, discretionary determination' as the [Commission] implied with its use of quotes."

Stone is incorrect.  The Commission's citation to the case in its response brief is correct; the case is a Wisconsin Supreme Court decision; and the court did use the phrase "nonreviewable, discretionary determination."  *Id.* at 655.  Based on the quotation that Stone included in his reply brief, it appears that Stone may have been mistakenly reviewing a decision of this court rather than the *Wisconsin's Environmental Decade* decision.  Regardless, aside from Stone's claim that the Commission was misstating the holding of the case, he does not otherwise distinguish *Wisconsin's Environmental Decade* or argue that its holding is inapplicable here.

¶23    Stone contends, however, that the Commission's decisions under WIS. STAT. § 5.05(2m) are, in fact, subject to WIS. STAT. ch. 227 administrative procedures.    For support, he cites WIS. STAT. § 227.02, which states that "[c]ompliance with this chapter does not eliminate the necessity of complying with a procedure required by another statute."    Thus, he argues that the Commission must comply with both § 5.05 and ch. 227.[7]    According to Stone, "[b]y … not complying with the administrative procedures in ch. 227, the [Commission] eliminated ch. 227's procedural safeguards," which are needed to make our elections fairer and more transparent to the public.

¶24    Stone's arguments on this point are misguided.    As the Commission explains, Stone's assertions on appeal "just assume[] [WIS. STAT. ch.] 227 applies," but beyond analogizing that the Commission is an "agency" under the

---

[7] Stone asserts that the Commission failed to comply with WIS. STAT. ch. 227 in numerous ways.    First, he alleges that the Commission failed to record or transcribe his three complaint hearings in violation of WIS. STAT. § 227.44(8).    He asserts that the Commission failed to issue findings of fact and conclusions of law in violation of WIS. STAT. § 227.47(1).    Stone argues that he was not given an opportunity for a hearing or reasonable notice under § 227.44(2)(a), (b), (c).    He also contends he was not provided with the opportunity to present, rebut, or offer countervailing evidence under WIS. STAT. §§ 227.44(3) and 227.45(2).    Further, he was not provided "Service of Decision" pursuant to WIS. STAT. § 227.48.    Finally, Stone alleges that the Commission "failed to cite reasons or rationale for its determination that Stone's complaints were frivolous" pursuant to WIS. STAT. § 227.483(3).

WIS. STAT. § 227.01(1) definition, he provides no support for that assertion.[8] *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered."). WISCONSIN STAT. § 227.02 does not, as Stone insists, "mandate[]" or "require[]" compliance with ch. 227. By its plain language, § 227.02 does not expand ch. 227 into places that it otherwise could not reach; it merely clarifies that ch. 227 is the general procedural framework unless displaced.

¶25      Further, the statutes that Stone references within WIS. STAT. ch. 227 are overwhelmingly procedural ones for "contested cases," *see* WIS. STAT. §§ 227.44, 227.45, 227.47, which have no application to WIS. STAT. § 5.05(2m) decisions because the complaints are not contested cases under ch. 227. WISCONSIN STAT. § 227.01(3) defines a "[c]ontested case" as "an agency

---

[8] In his reply brief, Stone argues that the Commission is precluded from arguing before us that WIS. STAT. ch. 227 does not apply because the Commission moved to dismiss his complaint and convert it to a petition under ch. 227, and the circuit court granted the motion. Although Stone's argument on this issue is underdeveloped, he cites generally to *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 525 N.W.2d 723 (1995), suggesting that his argument is based on issue preclusion grounds. "The rule of issue preclusion bars relitigation of issues of law or fact that have been litigated in a previous action." *Reuter v. Murphy*, 2000 WI App 276, ¶7, 240 Wis. 2d 110, 622 N.W.2d 464. Here, the question of whether the Commission's decisions under WIS. STAT. § 5.05(2m) are subject to judicial review under ch. 227 was not the question before the court when it granted the Commission's motion to dismiss and convert the case; therefore, the issue was never "actually litigated and determined in the prior proceeding by a valid judgment in a previous action." *See Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶37, 300 Wis. 2d 1, 728 N.W.2d 693. We also question whether there was a "prior proceeding" or a "previous action." *See id.* However, the parties do not develop an argument on this issue, and, accordingly, we will not further consider the matter.

To the extent that Stone is suggesting that the Commission is raising the issue of whether WIS. STAT. ch. 227 applies for the first time on appeal and should be precluded from doing so on the basis of the forfeiture doctrine, as a matter of judicial efficiency, a *respondent* may advance for the first time on appeal any argument that would sustain the circuit court's ruling. *See State v. Holt*, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985), *superseded by statute on other grounds*, WIS. STAT. § 940.225(7).

proceeding in which the assertion by one party of any substantial interest is denied or controverted by another party and in which, after a hearing required by law, a substantial interest of a party is determined or adversely affected by a decision or order." *See also **Collins v. Policano***, 231 Wis. 2d 420, 427-28, 605 N.W.2d 260 (Ct. App. 1999) ("A contested case proceeding thus generally involves two or more clearly identified adverse parties, as well as some type of fact-finding by an agency decision maker," which includes "the right to a hearing, the admission of evidence, the right to cross-examination, and the issuance of written decisions."). The procedures in § 5.05(2m) do not meet these criteria. At the very least, there is no evidentiary hearing required by law, responses to a complaint are "in writing" only, and the meetings of the Commission are held in closed session. WIS. STAT. §§ 5.05(2m)(c)2.a., 19.851(2), (3)(a).[9]

¶26 Therefore, we conclude that Stone cannot demonstrate that his WIS. STAT. § 5.05(2m) complaints were contested cases subject to the provisions of WIS. STAT. ch. 227. In his reply brief, Stone asserts, without any legal authority, that "[b]y its very nature, each [Commission] complaint is a contested case because each complaint has a complainant and respondent." *See **Pettit***, 171 Wis. 2d at 646. Stone further draws his own distinction, unsupported by legal authority, *see **Pettit***, 171 Wis. 2d at 646, that deliberation in closed session under WIS. STAT. § 19.851(2) "is different from the presentation of a complaint," and

---

[9] Given our supreme court's recent decision in ***Brown v. WEC***, 2025 WI 5, ¶¶3-4, 414 Wis. 2d 601, 16 N.W.3d 619, where the court determined that the plaintiff was not "aggrieved by an order" under WIS. STAT. § 5.06(6) because he did not suffer an injury to a legally recognized interest, we also question whether the Commission's decision on a WIS. STAT. § 5.05(2m) complaint could be said to determine or adversely affect a substantial interest of the complainant. The parties, however, did not raise that issue; therefore, it is not before us on appeal, and we will not further address it.

15

"the presentation, not deliberation, of [Commission] complaints should be open, especially to the complainants and respondents." That may very well be Stone's desire for how the Commission's complaint process under § 5.05(2m) operates, but Stone's desire finds no support in the actual statutes.

¶27 Moreover, Stone's arguments fail to account for the canon of statutory construction providing that where a general statute and a specific statute apply to the same subject, the specific statute controls. *See State ex rel. Hensley v. Endicott*, 2001 WI 105, ¶19, 245 Wis. 2d 607, 629 N.W.2d 686; *Westra v. State Farm Mut. Auto. Ins. Co.*, 2013 WI App 93, ¶10, 349 Wis. 2d 409, 835 N.W.2d 280 ("If conflicting statutes on the same subject matter cannot be reconciled, the more specific statute controls."). Here, it is easy to determine which is the general statute and which is the specific statute. WISCONSIN STAT. § 5.05(2m) decisions must comply with specific procedures that govern the Commission's process, while WIS. STAT. ch. 227's general procedures are applicable to a wide range of agency decisions.[10] Section 5.05(2m) controls.

¶28 In support of his position, Stone also observes that WIS. STAT. § 227.03(6) specifically excludes Commission orders under WIS. STAT. § 5.06(6) from WIS. STAT. ch. 227, but WIS. STAT. § 5.05(2m) is not likewise excluded. According to Stone, "[w]ithout an exclusion like there is for [§] 5.06(6) orders, § 5.05 complaints are subject to Chapter 227's administrative procedure."

---

[10] In his reply brief, Stone does not appear to dispute the Commission's assertion that WIS. STAT. § 5.05 is the specific statute, whereas WIS. STAT. ch. 227 are the general statutes. *See State v. Chu*, 2002 WI App 98, ¶41, 253 Wis. 2d 666, 643 N.W.2d 878 (explaining that arguments raised in State's response brief and not disputed in defendant's reply may be deemed admitted). Instead, Stone continues to declare that the § 5.05 procedures are inferior to the ch. 227 safeguards. Stone's quarrel, however, is with the legislature's drafting of § 5.05(2m).

¶29     Equating WIS. STAT. § 5.05 with WIS. STAT. § 5.06 rests on a false equivalence; the former governs the Commission's enforcement powers, while the latter provides a separate remedial process against local officials.  As our supreme court explained in **Brown v. WEC**, 2025 WI 5, ¶7, 414 Wis. 2d 601, 16 N.W.3d 619, "[§] 5.06(1) provides a means by which [an individual] … may challenge the decisions of local election officials … if she or he believes that a local election official's decision-making violates the law."[11]   The statute provides that the Commission may conduct an investigation and hold a hearing "on the matter in the manner prescribed for treatment of contested cases under [WIS. STAT.] ch. 227," § 5.06(1), (4), (5); that it "may … summarily decide the matter before it and, by order, require any election official to conform his or her conduct to the law, restrain an official from taking any action inconsistent with the law or require an official to correct any action or decision inconsistent with the law," § 5.06(6); that the Commission's decision may be appealed to the circuit court by "[a]ny election official or complainant who is aggrieved by an order," § 5.06(8); and that the court's review is "pursuant to the applicable standards for review of agency decisions under [WIS. STAT. §] 227.57," § 5.06(9).

¶30     As demonstrated above, unlike WIS. STAT. § 5.05, the provisions of WIS. STAT. § 5.06 create a contested case proceeding and supply a process for

---

[11] In **Brown**, our supreme court considered whether Kenneth Brown had standing to seek judicial review of a Commission decision "regarding the in-person absentee voting procedures implemented by the Racine City Clerk during the August 2022 primary election" pursuant to a complaint he filed under WIS. STAT. § 5.06(1) (2021-22).  **Brown**, 414 Wis. 2d 601, ¶¶1-2. Section 5.06(8) provides that in order to appeal the Commission's decision, a complainant "must have been 'aggrieved by an order' issued under § 5.06(6)."  **Brown**, 414 Wis. 2d 601, ¶3.  The court determined that "Brown was not 'aggrieved by an order'" because he "must [have] suffer[ed] an injury to a legally recognized interest as a result of the decision," and he "failed to demonstrate that [the Commission's] decision caused him any such injury."  **Id.**, ¶4.

judicial review. Accordingly, as the Commission argues, it is evident that the legislature "knew how to provide for a contested case proceeding and judicial review in [WIS. STAT. ch.] 5, when applicable." The fact that § 5.05(2m) has no hearing mechanism or judicial review procedure demonstrates that the legislature intended the statutes to operate differently. *Cf. **James v. Heinrich***, 2021 WI 58, ¶¶19-20, 397 Wis. 2d 517, 960 N.W.2d 350 (explaining the presence of "specific text" in one statute "in the face of its conspicuous absence from" another similar statute "shows that the legislature withheld that authority" and "supports our textual analysis").

¶31 In summary, the Commission's decisions under WIS. STAT. § 5.05(2m) to investigate a complaint, dismiss a complaint, terminate an investigation, file a civil complaint, or refer a matter to a district attorney are not subject to judicial review under WIS. STAT. ch. 227. Accordingly, Stone has no right to a particular procedure governing that decision—including making findings of fact and conclusions of law—beyond the process provided for in § 5.05(2m) and no right to judicial review of the Commission's decisions on his complaints.

## II. Due process

¶32 We next consider Stone's challenge to the Commission's determination that the Obama complaint was frivolous and its imposition of a $500 forfeiture.[12] Stone argues that the Commission erred by failing to provide him due process prior to imposing that forfeiture, including by failing to provide "prior notice of [the Commission's] intent to impose a fine, fail[ing] to allow him

---

[12] We requested supplemental briefing on this issue.

an opportunity to defend his complaint, and neglect[ing] to include the judicial review notice required by WIS. STAT. § 227.48(2)."

¶33 For its part, the Commission agrees that "imposing forfeitures under WIS. STAT. § 5.05(2m)(c)2.am. … entitle[s] Stone to due process," but it asserts that "pre-deprivation notice and opportunity to be heard" are not required. Instead, according to the Commission, "[t]his post-deprivation judicial review proceeding[, before this court and before the circuit court,] provides Stone with all the process he is due." According to the Commission, its "finding of frivolousness enables judicial review even without express factual findings or a factual record" because "[r]eviewing courts can assess whether Stone's complaint was frivolous as a matter of law by performing what amounts to a motion to dismiss analysis: accepting his factual allegations as true, could they conceivably state a legal claim?"

¶34 Here, too, we begin with the language of the statute. Within WIS. STAT. § 5.05(2m), the Commission has discretion when dismissing a complaint to find a complaint frivolous and to impose a forfeiture: "If the [C]ommission finds, by a preponderance of the evidence, that a complaint is frivolous, the [C]ommission may order the complainant to forfeit not more than the greater of $500 or the expenses incurred by the [C]ommission in investigating the complaint." Sec. 5.05(2m)(c)2.am. The statute does not otherwise provide a procedure or a standard by which the Commission is to review a complaint for frivolousness. The parties do not cite any case law discussing frivolousness under § 5.05(2m)(c)2.am., and our independent research has not revealed a reported decision construing § 5.05(2m)(c)2.am. or any evidence within the legislature's drafting file to shed light on the inclusion of this provision within the statute.

19

¶35 However, the frivolousness standard is found elsewhere in our statutes. *E.g.*, WIS. STAT. RULE 809.25(3)(c), WIS. STAT. §§ 227.483(3), 802.05(2), 809.103(2), 230.87(2), 814.245(11), 895.044(1). Therefore, we conclude that the test of whether a complaint under WIS. STAT. § 5.05(2m) is frivolous under subparagraph (2m)(c)2.am. is the same as the test set forth in these statutes. Accordingly, a complaint under § 5.05(2m) is frivolous if the Commission finds, by a preponderance of the evidence, that either of these two standards is satisfied: (1) the complaint was submitted in bad faith, solely for purposes of harassing or maliciously injuring another or the Commission; or (2) the complainant, or his or her attorney, knew, or should have known, that the complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law. *See, e.g.*, RULE 809.25(3)(c); § 227.483(3).

¶36 We apply a mixed standard of review to the frivolousness determination. Whether the complaint was submitted in bad faith, solely for purposes of harassing or maliciously injuring another or the Commission is analyzed under a subjective standard. *See **Stern v. Thompson & Coates***, 185 Wis. 2d 220, 235-36, 517 N.W.2d 658 (1994).[13] The Commission "must determine what was in the person's mind and were his or her actions deliberate or impliedly intentional with regard to harassment or malicious injury." *See **id.*** at

---

[13] ***Stern v. Thompson & Coates***, 185 Wis. 2d 220, 235-36, 517 N.W.2d 658 (1994), involved a determination of frivolousness under WIS. STAT. § 814.025 (1991-92). After our supreme court decided **Stern**, it repealed § 814.025 and recreated WIS. STAT. § 802.05. *See* S. CT. ORDER 03-06, 2005 WI 38, 278 Wis. 2d xiii, xiv (eff. Mar. 31, 2005). Nevertheless, the standards outlined in **Stern** have not been overruled, and courts continue to cite the case in determining frivolousness.

236. A person's state of mind is "inferred from the acts and statements of the person, in view of the surrounding circumstances." *Id.* at 236-37.

¶37 In contrast, courts use an objective inquiry to determine whether an action was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law. *See Juneau County v. Courthouse Emps., Local 1312*, 221 Wis. 2d 630, 638-39, 585 N.W.2d 587 (1998). "The standard is 'whether the attorney knew or should have known that the position was frivolous as determined by what a *reasonable attorney* would have known or should have known under the same or similar circumstances.'" *Id.* at 639 (quoting *Stern*, 185 Wis. 2d at 241).

¶38 Both the determination of what a party knew or should have known and whether the complaint was submitted in bad faith are factual questions. *See Stern*, 185 Wis. 2d at 236, 241; *see also Wisconsin Chiropractic Ass'n v. Chiropractic Examining Bd.*, 2004 WI App 30, ¶16, 269 Wis. 2d 837, 676 N.W.2d 580 ("The first warranty [under WIS. STAT. § 802.05(1)]—that the pleading is not used for an improper purpose—requires factual findings …."). The Commission's factual "findings will not be upset unless they are against the great weight and clear preponderance of the evidence," and courts "must accept a reasonable inference drawn by the [Commission] from established facts if more than one reasonable inference may be drawn." *See Stern*, 185 Wis. 2d at 236-37; *see also Wisconsin Chiropractic Ass'n*, 269 Wis. 2d 837, ¶16 (applying the clearly erroneous standard). Further, as our supreme court has expressed in other contexts involving a frivolousness finding, "[t]he findings must be specific," *Stern*, 185 Wis. 2d at 236-37, and the finder of fact cannot "conclude frivolousness or lack of it without findings stating which … criteria were present, harassment or knowledge or imputed knowledge that there was not 'any

reasonable basis in law or equity' for the position taken," **Sommer v. Carr**, 99 Wis. 2d 789, 792, 299 N.W.2d 856 (1981) (citation omitted).

¶39 In contrast, whether certain facts "fulfill the legal standard" for either ground for a frivolous finding is a question of law. *See* **Stern**, 185 Wis. 2d at 236. The question of "whether a legal theory is justified by existing law or a good faith argument for a change in the law" also presents a question of law. **Wisconsin Chiropractic Ass'n**, 269 Wis. 2d 837, ¶16. "All doubts on this issue are resolved in favor of the party or attorney" alleged to have filed a frivolous complaint with the Commission. *See* **Rabideau v. City of Racine**, 2001 WI 57, ¶46, 243 Wis. 2d 486, 627 N.W.2d 795.

¶40 As we explained above, Stone challenges, on due process grounds, the Commission's finding that the Obama complaint was frivolous and warranting of a forfeiture. "The Fourteenth Amendment to the United States Constitution and art. I, § 1 of the Wisconsin Constitution prohibit government actions that deprive any person of life, liberty, or property without due process of law." **State v. Ozuna**, 2017 WI 64, ¶22, 376 Wis. 2d 1, 898 N.W.2d 20 (citation omitted). "[T]here can be no doubt that at a minimum" the due process clause "require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." **State v. Lagrone**, 2016 WI 26, ¶48, 368 Wis. 2d 1, 878 N.W.2d 636 (quoting **Mullane v. Central Hanover Bank & Tr. Co.**, 339 U.S. 306, 313 (1950)); *see also* **Goldberg v. Kelly**, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard … at a meaningful time and in a meaningful manner." (citations omitted)); **Mathews v. Eldridge**, 424 U.S. 319, 334 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands." (citation omitted)).

¶41 As is also noted above, the parties do not dispute that Stone is entitled to procedural due process in connection with the Commission's imposition of the $500 forfeiture. *See Milwaukee Dist. Council 48 v. Milwaukee County*, 2001 WI 65, ¶50, 244 Wis. 2d 333, 627 N.W.2d 866 (explaining that protected property interests naturally include "actual ownership of real estate, chattels, or money" (citation omitted)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (cautioning that courts "must comply with the mandates of due process" when imposing a sanction). We agree with the parties that the prospect of the Commission imposing a forfeiture of up to $500, and the fact that Stone *was* assessed a $500 forfeiture, bring Stone's interest here within the ambit of the due process clause. According to the Commission, "the question then becomes 'whether the procedures used to deprive [Stone] of that interest were constitutionally sufficient.'" *See Andrade v. City of Milwaukee Bd. of Fire & Police Comm'rs*, 2024 WI 17, ¶28, 411 Wis. 2d 340, 5 N.W.3d 261. For the reasons that follow, we conclude that whatever procedure the Commission used to find that the Obama complaint was frivolous and to impose a forfeiture was constitutionally insufficient because it failed to provide Stone with notice and an opportunity to be heard.

¶42 In the present context, we conclude that due process principles require that a complainant be provided timely and adequate notice of the Commission's consideration that the complaint may be frivolous and a forfeiture is appropriate under WIS. STAT. § 5.05(2m)(c)2.am. and that he or she be provided

an opportunity to defend his or her position before the Commission.[14] *See Howell v. Denomie*, 2005 WI 81, ¶¶17, 19, 282 Wis. 2d 130, 698 N.W.2d 621 ("We … conclude that in order to determine that an appeal is frivolous [pursuant to WIS. STAT. RULE 809.25(3)(c)], the court of appeals is required to give notice that it is considering the issue. It must also give an opportunity to respond to the issue before a determination is made."); *State v. Nielsen*, 2011 WI 94, ¶33, 337 Wis. 2d 302, 805 N.W.2d 353 (suggesting that the court of appeals require a show cause order before imposing sanctions for a failure to comply with the Rules of Appellate Procedure); *see also Larsen v. City of Beloit*, 130 F.3d 1278, 1286-87 (7th Cir. 1997) (observing that whether sanctions are imposed under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, or pursuant to a court's inherent powers, "the imposition of sanctions requires that the party to be sanctioned receive notice of the possible sanction and an opportunity to be heard").

¶43 We find particularly persuasive our supreme court's decision in *Nielsen*. There, this court "imposed a sanction of $150 on the Office of the State Public Defender [(the SPD)] after finding that the appendix to the [SPD's] brief was deficient and the attorney's certification of the appendix was 'false.'" *Nielsen*, 337 Wis. 2d 302, ¶2. The SPD sought review of that decision before our supreme court, objecting on the basis that we "impos[ed] a monetary penalty, without giving notice to counsel and without giving counsel an opportunity to be

---

[14] We do not, however, conclude that a complainant is entitled to an evidentiary hearing before the Commission finds his or her complaint frivolous. *See, e.g.*, *In re Kunstler*, 914 F.2d 505, 521 (4th Cir. 1990) ("Due process does not require an evidentiary hearing before sanctions are imposed …."); *DiPonio Constr. Co. v. International Union of Bricklayers & Allied Craftworkers, Local 9*, 687 F.3d 744, 752 (6th Cir. 2012) ("'In this circuit, there is no requirement that a full evidentiary hearing be held before imposing sanctions.' All that is required is that the party 'be given notice and an opportunity to be heard.'" (citations omitted)).

24

heard in writing." *Id.*, ¶¶1-2, 18. As the Commission argues here, we asserted in *Nielsen* that our "practice of imposing a sanction allow[ed] counsel to seek [post-deprivation] review of the sanction," including a motion for reconsideration before this court or a petition for review before our supreme court. See *id.*, ¶24.

¶44 The court recognized that "[a] motion for reconsideration and a petition for review" would be problematic in this context because the sanctions issue and the merits of the case were "altogether different dispute[s]" that "should be untethered from one another to avoid any risk of confusion or conflict." *Id.*, ¶26. Further, the court recognized the "significance of counsel's … reputational interests" as a reason for providing attorneys "a forum in which to explain their decisions about the contents of an appendix before the label 'false certification' is attached." *Id.*, ¶32.

¶45 Ultimately, our supreme court "*suggest*[*ed*] that hereafter when the court of appeals is considering imposing a sanction on an attorney for filing a brief with a deficient appendix," that "an order to show cause should be issued directing counsel to explain why a violation … should not be found and why the attorney should not pay … a sanction." *Id.*, ¶33 (emphasis added). The court reasoned that "[a]n understanding of the attorney's position will better enable the court of appeals to gauge whether a violation has occurred and whether a sanction should be imposed"; that "[a]n order to show cause separate from the opinion on the merits of the underlying case allows attorneys to pursue and argue the dispute about the appendix without distracting from, delaying, or undermining the client's cause" and "prevents the complication and confusion that could arise if two independent disputes that may be moving in opposite directions in the court system are connected to one another"; and that an order to show cause gives

25

"[a]ttorneys … a meaningful opportunity to protect their professional reputation and avoid monetary sanctions." *Id.*, ¶¶34-35, 39-40, 44.

¶46 The *Nielsen* court's reasoning for suggesting the use of a show cause order is sound and is equally persuasive in the context of the Commission finding a complaint frivolous. Here, as in *Nielsen*, providing a complainant notice of the possible frivolous finding and an opportunity to present his or her position before the Commission would better allow the Commission to properly assess each element under the grounds for a frivolousness finding, some of which require findings of fact; would allow the Commission to separate the question of whether the complaint had established reasonable suspicion, which is unreviewable on judicial review, from the question of whether the complaint was frivolous, which is reviewable; and would provide claimants a meaningful opportunity to protect their reputation.[15] Further, the *Nielsen* court noted that although the $150 monetary sanction at issue in that case was "modest," it was "not trivial," *id.*, ¶19, which supports our conclusion that the prospect of a $500 forfeiture is not

---

[15] Stone reasonably submits that his reputation has been damaged by the Commission's finding that one of his complaints was frivolous and by the subsequent media attention. According to Stone, the Commission "deliberately published only its own findings while labeling Stone's complaint as 'frivolous' on its public website"; the Commission's refusal "to include Stone's filings and supporting documents resulted in substantial reputational harm to Stone"; and "[t]he harm [the Commission] caused was exacerbated when media outlets relied solely on [the Commission's] characterization of Stone having submitted a 'frivolous' election complaint." *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him [or her], notice and an opportunity to be heard are essential."). The Commission argues in response that "Stone is not an attorney—he is a pro se litigant—and so his professional reputation as an attorney is not at stake." While we agree that the reputational damage is not perhaps as significant for a pro se litigant, Stone still has an interest in avoiding the "frivolous" label, and he should be provided an opportunity to "explain [his] decisions … before the label ['frivolous'] is attached." *See State v. Nielsen*, 2011 WI 94, ¶32, 337 Wis. 2d 302, 805 N.W.2d 353.

insignificant, especially for pro se litigants, and represents a serious interest at stake.

¶47    The Commission responds to the above assertions by arguing that Stone's procedural due process rights have been satisfied through this judicial review proceeding.  Essentially, the Commission asserts that although WIS. STAT. ch. 227 "review is not available regarding its decisions to reject Stone's complaints for lack of reasonable suspicion," ch. 227 review is available to review the Commission's frivolousness finding under WIS. STAT. § 5.05(2m)(c)2.am. The Commission likens a frivolousness finding to a circuit court's grant of a motion to dismiss, explaining that the court creates no factual record and the analysis is limited to the four corners of the complaint.  Citing *Neitzke v. Williams*, 490 U.S. 319, 326 (1989), *superseded by statute on other grounds*, 28 U.S.C. § 1915A(b),[16] the Commission argues that it "performed essentially that same analysis here" because "[i]t examined Stone's complaint and, without performing any further factual investigation, deemed the complaint to be frivolous as a matter of law."  Therefore, argues the Commission, this "post-deprivation process provides a complete and adequate remedy" and "pre-deprivation notice

---

[16] The Commission cites *Neitzke v. Williams*, 490 U.S. 319, 326 (1989), *superseded by statute on other grounds*, 28 U.S.C. § 1915A(b), for its alleged statement that there is "'considerable' overlap between failure-to-state-a-claim and frivolousness standards."   In *Neitzke*, the question before the United States Supreme Court was "whether a complaint filed in forma pauperis which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is automatically frivolous within the meaning of [the former] 28 U.S.C. § 1915(d)," and the court concluded that "[t]he answer … is no."  *Neitzke*, 490 U.S. at 320.  In the decision, what the Court actually said was that "it is evident that the failure-to-state-a-claim standard of Rule 12(b)(6) and the frivolousness standard of § 1915(d) were devised to serve distinctive goals, and that while the overlap between these two standards is considerable, it does not follow that a complaint which falls afoul of the former standard will invariably fall afoul of the latter."  *Neitzke*, 490 U.S. at 326.  Under these circumstances, we disagree that *Neitzke* provides support for the Commission's position in this case.

and an opportunity to be heard [are] not constitutionally required." *See **Thorp v. Town of Lebanon***, 2000 WI 60, ¶53, 235 Wis. 2d 610, 612 N.W.2d 59 ("The requirement of procedural due process is met if a state provides adequate post-deprivation remedies.").

¶48     Initially, we disagree with the extent of the Commission's comparison between the standards for a motion to dismiss and a frivolousness finding. The Commission's review of and decision to dismiss a complaint are, as the Commission suggests, analogous to the review conducted for a motion to dismiss. However, as we have outlined above, *see supra* ¶35, the standard for frivolousness exceeds the standard for a failure to state a claim. Once the Commission determines that there is no basis for it to further investigate a WIS. STAT. § 5.05(2m) claim, to file a civil complaint, or to refer the complaint to a district attorney, the Commission must still decide (1) by a preponderance of the evidence, whether the complaint was submitted in bad faith or whether the complainant knew, or should have known, that the complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for a change of existing law; (2) whether to impose a forfeiture for the frivolous complaint; and (3) how much of a forfeiture—"not more than the greater of $500 or the expenses incurred by the commission in investigating the complaint"—to impose. *See* § 5.05(2m)(c)2.am. These determinations are not comparable to the determinations required for a motion to dismiss.

¶49     We further disagree with the Commission's assertion that judicial review under WIS. STAT. ch. 227 provides an adequate post-deprivation remedy in this case where there is no record related to the Commission's frivolousness decision. In response to the Obama complaint, the Commission issued a letter informing Stone that "[the Obama complaint] is dismissed due to lack of

28

reasonable suspicion, and the Commission further finds that the claims against the mayors of Milwaukee, West Allis, and Madison and Michelle Obama are frivolous and orders Mr. Stone to forfeit $500."

¶50 According to the Commission, "[t]hough terse, that conclusion of law provided 'enough information' for the circuit court to 'discern the basis of the [Commission's] decision' and therefore review it," *see Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶49, 362 Wis. 2d 290, 865 N.W.2d 162, because its "general finding" of frivolousness necessarily "implie[d] all facts necessary to support it, … specifically, that Stone knew or should have known that his complaint rested on groundless legal theories," *see Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d 583, 591, 286 N.W.2d 540 (1979) (observing that "[a] general finding by [an agency] implies all facts necessary to support it" and that findings "may be inferred from other properly made findings" or other evidence).

¶51 We conclude that the information contained in the Commission's letter does not provide enough information to discern the basis for its decision to facilitate a review under WIS. STAT. ch. 227. The Commission stated only that the Obama complaint was frivolous. While it is true, as the Commission suggests, that the circuit court and this court could perhaps extrapolate the reasons for the Commission's finding of frivolousness—i.e., that it believed that Stone's claims were without any reasonable basis in law or equity or lacked evidentiary support— frivolousness is not strictly synonymous with lack of evidentiary support or baseless legal theories. Frivolousness is established based on more, and the Commission asks us to infer too much. Moreover, given that the Commission's letter specifically identified Stone's claims against individuals—i.e., the mayors of Milwaukee, West Allis, and Madison as well as Michelle Obama—it would also be fair for us to infer that the Commission believed that Stone's complaint was

filed in bad faith with an intent to harass. The possibility that both beliefs could be true adds to our inability to discern the basis for the Commission's decision.

¶52    In addition, the frivolousness standard does not ask only whether the complaint is "without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law"; it also asks whether "[t]he party or the party's attorney knew, or should have known," that fact. That question, as noted above, is determined based on an objective standard and, in this case, requires an inquiry into what a reasonable pro se complainant would have known or should have known under the same or similar circumstances. *See Courthouse Emps.*, 221 Wis. 2d at 638-39; *Sommer*, 99 Wis. 2d at 797 ("The question is not whether a party can or will prevail, but rather is that party's position so indefensible that it is frivolous and should that party or its attorney have known it."). "Determining what was known or should have been known involves questions of fact." *Stern*, 185 Wis. 2d at 241; *see also Jandrt ex rel. Brueggeman v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 550, 597 N.W.2d 744 (1999) (noting multiple factors the circuit court should consider to determine what was known or should have been known). The Commission made no such findings, and we are unable to deduce or infer these findings from the Commission's letter. Accordingly, we disagree with the Commission that this court and the circuit court "required no further evidentiary record or explicit findings of fact to evaluate the Commission's argument."

## CONCLUSION

¶53    In summary, we conclude that the Commission's decisions under WIS. STAT. § 5.05(2m) to dismiss Stone's complaints on the basis of a failure to establish reasonable suspicion are solely vested in the discretion of the

30

Commission and are *not* subject to judicial review under WIS. STAT. ch. 227. Therefore, we affirm the circuit court's decision in part on that basis.

¶54 We also conclude that the Commission's decision to find the Obama complaint frivolous and impose a $500 forfeiture *is* subject to judicial review under WIS. STAT. ch. 227. We further conclude that prior to any judicial review, Stone was entitled under the tenets of procedural due process to notice and an opportunity to be heard before the Commission found the Obama complaint frivolous and imposed a forfeiture. Under the circumstances here, where there is no record to review related to the Commission's finding that Stone's complaint is frivolous or the rationale behind the $500 forfeiture, any judicial review under ch. 227 would be speculative and illusory or, at best, perfunctory and would not provide adequate safeguards against an erroneous deprivation.

¶55 We therefore reverse the circuit court's decision in part and remand for the Commission to provide Stone with an opportunity to be heard on the frivolousness issue. If, after Stone is heard on that issue, the Commission still finds one of Stone's complaints to be frivolous, the Commission must provide specific findings of fact and conclusions of law underlying that decision and any resultant decision to impose a forfeiture.

¶56 No costs to either party.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded with directions.

Recommended for publication in the official reports.